UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL L.,<br>        Plaintiff,<br>    v.<br>LELAND DUDEK, Acting Commissioner,<br>        Defendant. | Case No. 3:24-cv-07123-JSC<br><br>**ORDER RE: SOCIAL SECURITY APPEAL**<br><br>Re: Dkt. Nos. 12, 15 |

Plaintiff seeks social security benefits for a combination of mental and physical impairments including heart disease status post non-ST elevated myocardial infarction, hypertension, obstructive sleep apnea, cervical degenerative disc disease, obesity, anxiety disorder, and autism spectrum disorder. (Administrative Record ("AR") 19, 360.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying his benefits claim. After careful consideration of the parties' briefing, the Court concludes oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and AFFIRMS the Commissioner's decision.

**BACKGROUND**

**A.    Procedural History**

Pursuant to the Social Security Act, on July 27, 2021, Plaintiff filed an application under Title XVI for supplemental security income alleging a disability onset date of May 5, 2018. (AR 19.) Plaintiff's application was denied initially and on reconsideration. (AR 19, 67-111.) Plaintiff submitted a timely request for a hearing before an Administrative Law Judge (ALJ). (AR 155.) A hearing was held on September 6, 2023, where Plaintiff and a vocational expert testified. (AR 40-66.) On November 2, 2023, the ALJ issued an unfavorable decision finding Plaintiff was

not disabled within the meaning of the Social Security Act.  (AR 17-33.)

Plaintiff filed a timely request for review with the Appeals Council, which the Appeals Council denied.  (AR 1-3.)  Plaintiff thereafter filed the underlying action.  In accordance with Civil Local Rule 16-5, the parties filed cross briefs on appeal.  (Dkt. Nos. 12, 15.[1])

**B.   Issues for Review**

1. Did the ALJ err in evaluating Plaintiff's subjective symptom testimony?
2. Did the ALJ err in discrediting the third-party statements?

## LEGAL STANDARD

A claimant is considered "disabled" under the Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough he is unable to do his previous work and cannot, based on his age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, he can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on other grounds; *see* 20 C.F.R. § 404.1520(a).

## DISCUSSION

Plaintiff contends the ALJ's decision was not supported by substantial evidence because it

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

did not consider the severity the symptoms of his sleep apnea and mental impairments. In particular, Plaintiff insists the ALJ erred in failing to credit his subjective symptom testimony regarding the need for breaks and the third-party statements which supported his symptoms of fatigue and need for rest breaks.

### A.     SUBJECTIVE SYMPTOM TESTIMONY

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (cleaned up).

Applying the two-step analysis, the ALJ first determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 25.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of his symptoms, or else find evidence of malingering. *See Lingenfelter*, 504 F.3d at 1036. The ALJ did not find evidence of malingering, but found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 25.) Elsewhere in her decision the ALJ elaborated, stating she had specifically considered Plaintiff's reports of "excessive fatigue, breathing difficulties with use of a CPAP machine, extreme anxiety, lack of energy, lack of motivation, needing gentle reminders, fearful of things, difficulty walking for extended periods, concentration problems, difficulty completing tasks, and frustra[tion] at times." (AR 24.)    The ALJ found the symptoms unsupported because (1) his testimony was inconsistent

with the objective medical evidence; (2) Plaintiff had not "generally received the type of medical treatment one would expect for a totally disabled individual" as his treatment was essentially "routine and conservative"; and (3) his limitations were inconsistent with his activities of daily living.  (AR 24-27.)

Plaintiff challenges only the ALJ's finding as to his testimony regarding his need for frequent breaks as a result of his "extremely severe" obstructive sleep apnea.  (Dkt. No. 12 at 13.) The ALJ identified clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's subjective reports of fatigue.

First, the ALJ found Plaintiff's symptoms were not supported by the record stating:

> The claimant alleged issues with fatigue. Notably, the claimant, by way of his representative noted that he was recommended to take a daily 45 minute nap with his device (Ex. 7F, p. 56[AR 795]). This was noted, but predates his filing by almost three years. Since filing, there is little evidence of recommended naps or that he has adhered to this recommendation. He did not report napping to his clinicians and was not observed as fatigued in general. Rather, outside of edema and shoulder pain, he appears to have generally denied symptoms.

(AR 27.)   The objective medical evidence supports these conclusions.  In May 2017, Plaintiff was diagnosed with Obstructive Sleep Apnea (OSA) and Obesity Hypoventilation Syndrome (OHS) and prescribed a bilevel (BiPAP) device.  (AR 799.)  At a follow-up with Dr. Robinson in November 2017, Plaintiff "report[ed] he benefits form [sic] his device, although he is completely inadherent."  (AR 799.)  In March 2018, Plaintiff was again seen by Dr. Robinson for a follow-up and she continued to describe him as "inadherent" and thus not benefitting from the bilevel therapy.  (AR 794.)  Dr. Robinson recommended he "take his device into th [sic] room in which he watches TV after dinner and to place his machine on before watching tv" and "schedule a 45 minute nap each afternoon with his device."  (AR 794-795.)  Dr. Robinson noted Plaintiff was to "follow up with me in 4 month or sooner if problems arise."  (AR 795.)  Plaintiff returned to Dr. Robinson four months later in August 2018—three months after his disability onset date—and Dr. Robinson observed Plaintiff was "not manifestly sleepy" and he was "[a]adherent to and benefiting from bilevel therapy."  (AR 785-786.)  Dr. Robinson did not repeat the recommendation that he nap each afternoon with his device; instead, she issued a new prescription and directed

4

Plaintiff to follow up in 12 months or earlier if problems arose. (AR 786.) During his follow-up visit a year later, Dr. Robinson observed Plaintiff was "not manifestly sleepy," he was "[a]dherent to and benefiting from bilevel therapy," and she again did not repeat the recommendation that he nap each afternoon with his device. (AR 763-764.) At his visit the following year, Dr. Robinson reported Plaintiff's obstructive sleep apnea was "maintained on bilevel therapy. Pt. is adherent to and benefits form bilevel therapy. He offers no complaints." (AR 747 (emphasis omitted).) There was no recommendation that he take a daily nap. (AR 748.) The record does not appear to contain further follow-up with Dr. Robinson after August 2020.

Nor does the record contain other evidence of Plaintiff complaining to his medical providers of fatigue. Plaintiff's argument that the ALJ improperly faulted him for failing to pursue more aggressive treatment without identifying that more aggressive treatment was available misses the mark—the ALJ did not fault him for not pursuing a particular treatment, the issue was Plaintiff failed to pursue *any* treatment. Plaintiff contends the ALJ failed to consider whether his cognitive impairments precluded him from pursuing treatment for his fatigue. The record, however, is replete with evidence Plaintiff pursued treatment for other conditions including psoriasis (AR 1089-1223 (2022 dermatology treatment records) AR 1044-1049 (2021 dermatology treatment records) AR 772-783 (2018-2019 dermatology treatment records), edema (AR 893-895, 923-930, 1113-1146), and left shoulder pain (AR 1023-1035.)  The ALJ noted as much when considering Plaintiff's subjective symptom testimony. (AR 27 ("outside of edema and shoulder pain [Plaintiff] appears to have generally denied symptoms").)

Plaintiff's contention that the record contains "many remarks" about his fatigue is likewise unpersuasive. (Dkt. No. 12 at 18.) As the Commissioner notes, much of this evidence pre-dates his onset date including the recommendation that he take a 45-minute nap every afternoon. (AR 795.) And, the ALJ specifically noted the lack of evidence of any need for naps. (AR 27.) Indeed, of the "many remarks" in the record Plaintiff cites, the majority pre-date the disability onset date, and of those that post-date his onset date, two are taken entirely out of context. Plaintiff argues the March 24, 2021 treatment notes at AR 908 indicated "even with the use of CPAP he 'continues to feel some fatigue." (Dtk. No. 12 at 18 (citing AR 908).)  The actual note

is "[c]ontinues to feel some fatigue. Improved with CPAP use" and later at that same visit the doctor's assessment indicates "OSA [obstructive sleep apnea] on CPCP" "no issues." (AR 908, 910.)  As discussed above, Plaintiff's other 2021 treatment records do not document reports of fatigue or issues with his sleep apnea (AR 739-746, 873-906, 913-924, 994-1024.)  Similarly, the July 2023 treating cardiologist record Plaintiff cites is simply a check box "heart conditions questionnaire" where one of the possible symptoms was fatigue:

> c. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to
>    (i.) Dyspnea, fatigue, palpitations, or chest discomfort; or

(AR 1076.)

       The record does contain two examples of third parties referencing Plaintiff's fatigue: Plaintiff's case manager reported in August 2021 that he lacks motivation to do household chores due to fatigue (AR 287), and in an undated letter his therapist stated he experiences "relentlessness, challenges concentrating, and tire easily" (AR 1074).  But given the numerous medical records which make no reference to fatigue, the evidence Plaintiff's prescribed bilevel therapy had improved his sleep apnea without any further recommendations for daily naps, and Plaintiff's failure to seek ongoing treatment for fatigue, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective symptom testimony on these grounds.  That Plaintiff's fatigue "was not severe enough to motivate [him] to seek" additional treatment "is powerful evidence regarding the extent" of his ailment, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (cleaned up), and a sufficient reason on its own to reject his testimony, *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  *See also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

       The Court need not consider Plaintiff's additional argument that the ALJ erred in relying on Plaintiff's activities of daily living as a basis for rejecting his subjective symptom testimony regarding fatigue.  First, it is not clear the ALJ relied on Plaintiff's activities of daily living as a basis for rejecting his fatigue testimony. The portion of the ALJ's decision discussing Plaintiff's symptoms of fatigue addressed above does not reference his activities of daily living.  (AR 27.)

1  Second, even if the ALJ erred in failing to explain how Plaintiff's activities of daily living such as
2  preparing simple meals, driving a car, going to the gym twice a week, shopping in stores, handling
3  finances, and volunteering weekly at an equestrian stable (AR 24, 29), are transferrable to a work
4  setting, *see Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014), any such error would not
5  require reversal. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)
6  (upholding a credibility determination although one of the ALJ's reasons was invalid). "So long
7  as there remains substantial evidence supporting the ALJ's conclusions on ... credibility and the
8  error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed
9  harmless and does not warrant reversal." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,
10  1162 (9th Cir. 2008) (cleaned up).

### B.    Third-Party Statements

Next, Plaintiff contends the ALJ erred by failing to provide germane reasons for discrediting the third-party statements offered by Plaintiff's case manager Nancy Wilson-Locke (AR 285-292), and Camden Burnell with whom Plaintiff worked at the equestrian center (AR 357). A lay witness's testimony about a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may discount such evidence only by providing "reasons germane to each witness."[2] *Id.*; *see also Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), superseded on other grounds by 20 C.F.R. § 404.1502(a).

Plaintiff argues the "ALJ summarized [Ms. Wilson-Locke and Mr. Burnell's] statements and stated that she 'considered' them (AR 24) with no further explanation as to why the described limitations were not incorporated into the RFC." (Dkt. No. 12 at 20.) Not so. The ALJ provided

---

[2] The Commissioner argues the germane reasons standard no longer applies to claims filed on or after March 27, 2017 because the Agency amended its regulations, *see* 20 C.F.R. § 416.920c(d), to specify ALJs "are not required to articulate how [they] considered evidence from nonmedical sources." (Dkt. No. 15 at 6 (citing *Hudnall v. Dudek*, 130 F.4th 668 (9th Cir. 2015)).) But the Ninth Circuit has since vacated and withdrawn that decision in *Hudnall v. Dudek*. *See Hudnall v. Dudek,* 130 F.4th 668 (9th Cir.), opinion withdrawn, decision vacated, 133 F.4th 968 (9th Cir. 2025). On May 13, 2025, the Ninth Circuit issued a new unpublished decision declining to "decide whether the regulations constitute 'intervening higher authority' that is 'clearly irreconcilable' with our [germane reasons] precedent." *See Hudnall v. Dudek*, No. 23-3727, Dkt. No. 45 (9th Cir. May 13, 2025).

7

a detailed statement regarding her consideration of the third-party statements, excerpted below:

> To the extent that Ms. Wilson-Lock, the claimant's case manager's third-party statement constitutes an opinion, it is not persuasive. She notes various physical and mental problems, none of which are consistent with the neurocognitive and mental status examinations findings. It is not consistent with the lack of reported fatigue or motivation during treatment. Moreover, the physical findings are not consistent with even the claimant's own testimony and physical examination findings. However, it is notable that she also confirms some good activities of daily living (Ex. 3E [AR 285-292). Mr. Brunell's statement is not entitled to a persuasiveness articulation, but is considered in conjunction with the claimant's allegations. The indicated need for breaks and difficulty walking and standing are not consistent with the lack of physical examination findings or the claimant's own testimony such as reporting no problems being on his feet. This individual notes that the claimant was "mentally willing," but physically cannot manage. This is not consistent with the minimal physical examination findings, conservative treatment, and minimal complaints (Ex.16E [357]).

(AR 31.)

While "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account," the ALJ can disregard that testimony if she provides germane reasons such as "that it conflicts with medical evidence." *Lewis*, 236 F.3d at 511. The ALJ provided specific reasons supported by substantial evidence for rejecting the third-party opinions, including that Ms. Wilson-Locke and Mr. Burnell's statements were not consistent with the medical evidence. "If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

## CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's decision. Separate judgment will follow.

This Order disposes of Docket Nos. 12, 15.

**IT IS SO ORDERED.**

Dated: May 19, 2025

JACQUELINE SCOTT CORLEY
United States District Judge